UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| VS. | : | NO. 3:03CR228(JCH) |
| | : | |
| RAYMOND DelVECCHIO, JR. | : | JANUARY 4, 2005 |

### DEFENDANT'S SENTENCING MEMORANDUM

On September 22, 2004, Mr. DelVecchio plead guilty four counts of felon in possession of a firearm, in violation of 18 U.S.C. Section 922(g)(1) and to one count of threatening or attempting to murder a federal law enforcement officer, in violation of 18 U.S.C. Section 115(a)(1)(B). Under the terms of the plea agreement, Mr. DelVecchio reserved the right to seek a downward departure on the grounds that his criminal history is overstated, and on grounds of health. The Government reserved the right to seek an upward departure on grounds unspecified at the time of sentencing. Mr. DelVecchio now faces sentencing.

At the time of sentencing, the parties further agreed that the Guideline range for sentencing was 108-135 months. The parties understanding of sentencing variables is related in the Presentence Report at Para. 5. Although not binding upon the Court, the parties agreed that the sentence should be 135 months if the Court determined that no departures are applicable in this case.

I.  **Factors To Be Considered At Sentencing**

Various factors to be considered in imposing sentence are set forth in 18 USCA §§ 3553(a). Under §§ 3553(a), the sentencing court must impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in 18 USCA §§

3553(a)(2), which provides that the court, in determining the particular sentence to be imposed, must consider the need for the sentence imposed to (1) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (2) afford adequate deterrence to criminal conduct; (3) protect the public from further crimes of the defendant; and (4) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. Section 3553(a) further provides that in determining the particular sentence to be imposed, the court must also consider:

* The nature and circumstances of the offense and the history and characteristics of the defendant.
* The kinds of sentences available.
* The kinds of sentences and the sentencing ranges established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission and in effect on the date the defendant is sentenced, or (in the case of a violation of probation or supervised release) the applicable guidelines or policy statements issued by the Sentencing Commission.
* Any pertinent policy statement issued by the Sentencing Commission that is in effect on the date the defendant is sentenced.
* The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.
* The need to provide restitution to any victims of the offense.

A sentencing court must impose a sentence of the kind, and within the range,

established by the relevant provisions of the Sentencing Guidelines, unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.

The Court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, must consider the factors set out in 18 USCA §§ 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

In determining whether to make a recommendation concerning the type of prison facility appropriate for the defendant, the court must consider any pertinent policy statements issued by the Sentencing Commission pursuant to 28 USCA §§ 994(a)(2).

**II      The Defendant's Criminal History**

Aside from the instant offenses, the defendant has been convicted of only two misdemeanors in the past twenty years. In 1995, Mr. DelVecchio received a six months suspended sentence for two breaches of the peace.

Mr. DelVechhio's most signigicant offense occurred nearly 25 years ago, when he was arrested for arson in the first degree. After a jury trial, more than twenty years ago, he was convicted and sentenced to a period of incarceration ranging from 12.5 to 25 years. Mr. DelVecchio's conviction was overturned in 1983 when the Supreme Court held that the trial court had incorrectly charged on the proof beyond a reasonable doubt standard. State v. DelVechhio, 191 Conn. 412 (1983). Mr. Delvecchio entered guilty pleas to avoid a second trial, and was sentenced to a reduced period of incarceration

ranging from nine to 12 years. He was released on May 29, 1989.

In 1984, Mr. DelVecchio was thirty-two years old; he was thirty six at the time of sentencing after his plea.

### A. The One Point Arising From Mr. DelVecchio's Breach Of Peace Convictions Overstates the Seriousness Of His History

Section 4A1.2(c)(1) of the Sentencing Guidelines controls which sentences should be counted, and which should be excluded in calculation of a defendant's criminal history. Excluded is the crime "disorderly conduct or disturbing the peace." This crime can be counted if it yielded " term of probation of at least one year or a term of imprisonment of at least thirty days." In this case, Mr. DelVecchio was sentenced to a six month suspended sentence and 15 months of probation.

Breach of the peace is defined as follows by Connecticut General Statutes Section 53a-181[1]:

> (a) A person is guilty of breach of the peace ... when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person: (1) Engages in fighting or in violent, tumultuous or threatening behavior in a public place; or (2) assaults or strikes another; or (3) threatens to commit any crime against another person or such person's property; or (4) publicly exhibits, distributes, posts up or advertises any offensive, indecent or abusive matter concerning any person; or (5) in a public place, uses abusive or obscene language or makes an obscene gesture; (or) creates a public and hazardous or physically offensive condition by any act which such person is not licensed or privileged to do.

It is a class B misdemeanor, carrying a term of imprisonment of no more than six

---

[1] A felony Breach of Peace was created effective January 1, 2002, and is codified at 53a-180aa.

months, pursuant to Connecticut General Statutes Section 53a-36. A Class B misdemeanor carries a potential term of probation not to exceed two years, pursuant to Connecticut General Statutes Section 53a-29.

According to the Presentence Report, officers executing a search warrant at Mr. DelVecchio's home found weapons. PSR, at para. 59. Even with Mr. DelVechhio's prior felony record, he was offered a chance to plead to misdemeanors and a suspended sentence. To the practiced eye, the facts supporting the plea and the plea itself are incongruous. A felon in possession of Mausers and ammunition was permitted to enter the same plea a man or woman might enter after a loud and boisterous New Year's Eve celebration. Either the facts reported overstate the basis of the arrest, or the law did not support the seizure and Mr. DelVecchio was offered an attractive plea in order to avoid litigation that may have resulted in no case whatsoever. In either case, the defendant asks the Court to depart downward.

A misdemeanor such as breach of the peace can yield a point for a sentence involving 30 days and/or a period of probation in excess of one year. In his case, only one condition was satisfied, the probationary condition. The more serious sanction, incarceration, was not imposed. Of the three options available to the court: incarceration; incarceration plus probation; or, pure probation, the court chose the least intrusive sentence, declining to impose any period of incarceration. The sentencing judge was arguably in a far better position to assess the seriousness of the conduct in question. Having chose the least serious sanction, the court signaled its view that the conduct in question was not as serious a violation as suggested in the PSR.

**B. Mr. DelVecchio's Criminal History Is Overstated Given The Great Length Of Time Between His 1980 Arrest And His August 2003 Arrest, The Fact That His Prior Conviction Was Reversed, And The Fact That He Entered A Plea In 1984 As A Means Of Reducing His Sentence**

Mr. Delvecchio was released from prison in May 1989, some 14 years before the events giving rise to his pleas in the instant case. The sentence itself, however, was imposed after his plea in 1984, almost 20 years before the events at issue here. Indeed, his first sentence was imposed sometime in 1981 or 1982, as his appeal was not decided until 1983.

Certainly, Mr. DelVecchio's prior arson convictions warranted a significant period of incarceration, and Mr. DelVecchio was sentenced to a long period of imprisonment. However, not until the events in the instant case, occurring almost one quarter of a century later, did Mr. DelVecchio again commit a felony. Significantly, in the instant case Mr. DelVecchio did not plead to arson, or to attempt to commit an act of arson. The crimes to which he plead, though serious, are unrelated to the crimes to which he pleaded guilty in 1984. His crimes here are crimes of fear and do not involve the wilful destruction of property or lives.

A central issue in the context of Mr. DelVecchio's sentencing is an estimation of what he has actually done. Is he a malign and malevolent Tony Soprano or is he a trash-talking kin of Danny DeVito? While his speech is unappealing and supports a conviction, it is not clear what he has actually done. He did not threaten the officer or the confidential informant in this case: there is no evidence he ever conveyed a threat to these men or authorized anyone to threaten them. In fact, there is no evidence that

6

the men became aware of any threat whatsoever. Instead, Mr. DelVecchio evinced a desire to see the men who were prepared to testify against him dead, a not altogether uncommon response of an individual facing federal prosecution. His words may well have set in motion a course of events that could have resulted in the death of another, but lacking here is what is lacking in so many murder for hire schemes: consideration, a plan, explicit importuning. Rather than a co-conspirators cold and calculating plans, the record here bespeaks the sort of stereotypes common to B-Grade films. Did Mr. DelVecchio intend to have the agent and informant "sleep with the fishes?"

Mr. Delvecchio contends that his prior conviction is stale, that the great interval between convictions renders the risk of recidivism slight, that the prior offense is different in kind from the offense to which he plead her, that there is no pattern of criminal activity and that the nature of the evidence offered against him in this case is questionable.

Should Mr. DelVecchio go to prison? Yes. But he requests that the Court depart downward by one point, lowering his criminal history to a Category II, and thus exposing him to a maximum of 121 months.

### III   The Defendant's Medical Condition

Mr. DelVecchio is not well. At age 56, he is suffering from chronic heart disease and requires the use of nitroglycerin tablets even to walk across the courtroom. Whether a desire to avoid the stress of trial was a factor in his decision to enter a plea here is not before the Court, but the Court can and should take note of the fact that in 1991 he underwent a quadruple bypass; he currently suffers from blocked arteries.

PSR, paras 74, 77.

Clearly, Mr. DelVecchio's heart condition is the sort of mitigating circumstance of which a Court can take consideration at the time of sentencing. Can it be said the occluded arteries in the wake of a quadruple bypass do not resemble the sort of mitigating factor the Court held sufficient to depart downward in the case of <u>U.S. v. Velasquez</u>, 762 F.Supp. 39 (1991), an Eastern District of New York case in which the Court found metastasized cancer the sort of circumstance not adequately taken into consideration by guidelines drafters?  Mr. DelVecchio cannot content, and does not contend, that the Bureau of Prisons lacks the facilities to care for heart disease. There are facilities to provide treatment. The question becomes whether the treatment is efficacious? The contention here is that given his history, his repeat heart disease is more like cancer that cannot be stopped. Mr. DelVecchio is a marked man. The Guideline drafters never intended a sentence of this sort to be a death sentence.

### IV    Conclusion

For all the reasons stated above, Mr. DelVecchio requests that the Court depart downward and sentence him to a period of ten years incarceration.

THE DEFENDANT


By_____
NORMAN A. PATTIS
Williams and Pattis, LLC

        51 Elm St., Suite 409
        New Haven, CT 06510
        203.562.9931
        203.776.9494 (fax)

## **CERTIFICATION**

The foregoing was hand-delivered to Keith King United States Attorney's Office, 157 Church Street, New Haven 06510 this 4th day of January 2005.

_____
NORMAN A. PATTIS